## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| SHARON RENEE MCCARY-BANISTER, | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )   Civil Action No.  SA-19-CV-00782-XR |
| | ) |
| ANDREW M. SAUL, COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
| *Defendant.* | ) |

## ORDER

On this day, the Court considered Plaintiff Sharon Renee McCary-Banister's request for judicial review of the administrative denial by the Social Security Administration ("SSA") of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 405(g), 1383(c)(3). Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge Elizabeth S. Chestney issued a Report and Recommendation that the Commissioner's decision be VACATED and that the case be REMANDED to the Commissioner for further proceedings. *See* docket no. 16 (the "R & R"). On May 26, 2020, the Commissioner filed objections to the R & R. *See* docket no. 19.

## BACKGROUND

*1.   Factual & Procedural Background*

Plaintiff, in her applications for SSI and DIB, alleged disabilities since September 16, 2015.[1] R & R at 2 (citing Tr. 237–47). Plaintiff's applications were initially denied on July 12,

---

[1] Plaintiff alleges "a broad spectrum of health issues including . . . polyneuropathy, radiculopathy, lumbar spine disc protrusion causing right foraminal stenosis and impingement of the right nerve root, cervical spine disc protrusion with muscle spasms, diagnosis of chronic pain both shoulders,

2016, and subsequently denied upon reconsideration on January 11, 2017. *Id.* (citing Tr. 82–129). Following the denial upon reconsideration, Plaintiff requested an administrative hearing, which Plaintiff and her attorney attended before Administrative Law Judge ("ALJ") Susan Whittington on January 23, 2018. *Id.* (citing Tr. 42–81, 176).

ALJ Whittington denied Plaintiff's applications on August 28, 2018. *Id.* (citing Tr. 15–32). Plaintiff requested a review of the ALJ's decision by the Appeals Council, and the Council denied Plaintiff's request for review on March 6, 2019. *Id*. (citing Tr. 4–7). On May 4, 2019, Plaintiff filed the instant case under 42 U.S.C.§ 405(g), seeking review of the administrative determination and requesting remand. *Id.*

  2. *Magistrate Judge Chestney's Report and Recommendation*

Magistrate Judge Chestney's R & R establishes that ALJ Whittington was not properly appointed under the Constitution's Appointments Clause during Plaintiff's administrative hearing, and that Plaintiff did not waive or forfeit her right to challenge this constitutional violation by failing to raise it during the administrative process. *See* R & R. With respect to the propriety of the ALJ's appointment, the R & R notes that "the Commissioner does not dispute the merits of Plaintiff's constitutional challenge to her administrative proceedings before ALJ Whittington."[2] *Id.* at 13; *see also Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018) (holding that ALJs are inferior officers subject to the appointment requirements of the Appointments Clause). Given this, the majority of

---

diagnosis of gait abnormality, depression, anxiety, diagnosis of a balance disorder, diagnosis of a weakness disorder, and a very rare autoimmune disorder CIPD." Docket no. 13 at 2 (citing Tr. 18, 348, 350, 438–40, 441, 444, 483).

[2] *See also* docket no. 19 at 2 n.1 ("On July 16, 2018 [after Plaintiff's hearing before ALJ Whittington], the acting Commissioner ratified the appointment of SSA ALJs and Appeals Council administrative appeals judges and approved their appointments . . . to address any Appointments Clause questions involving SSA claims.") (citing 84 Fed. Reg. 9582-02 (Mar. 15, 2019)).

the R & R is dedicated to assessing whether Plaintiff waived or forfeited her constitutional challenge to the administrative proceedings before ALJ Whittington by failing to raise her challenge before the ALJ or Appeals Council.[3]

In investigating this question, the R & R assesses the landscape of federal court opinions that have been issued post-*Lucia* and finds that "[m]ost of the lower courts have sided with the Commissioner and refused to address the merits of an Appointments Clause challenge where the claimant failed to present the argument before the ALJ or Appeals Council." R & R at 5. However, the R & R finds that the Third Circuit, so far the only federal appellate court to decide a case on this topic,  "embraced [a] minority position" and "declined to enforce" the argument that claimants must present Appointments Clause challenges before an ALJ or the Appeals Council to preserve a challenge for federal court review. *Id.* (citing *Cirko v. Cmm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020)). While the Supreme Court did find that the plaintiff in *Lucia* had made a "timely challenge," the R & R notes that the Court "did not provide any guidance as to what made the claim 'timely' or 'untimely' under the Appointments Clause." *Id.* (quoting 138 S. Ct. at 2055). The R & R also highlights that several federal district courts within Texas have adopted this minority position. *Id.* at 5–6 (citing, *e.g.*, *Hernandez v. Saul*, 5:18-CV-00955-OLG (Mar. 26, 2020) (dkt. 27) (adopting minority position); *Janice Marie J. v. Saul*, No. 3:19-CV-745-B-BN, 2020 WL 874811, at *4 (N.D. Tex. Jan. 30, 2020) (same)).

The R & R offers three reasons supporting the conclusion that remand is necessary in this case. *Id.* at 6. First, the R & R finds that the Commissioner conflates the doctrines of "waiver" and

---

[3] Plaintiff "concedes that she first raised her challenge under the Appointments Clause in her Complaint for judicial review filed in this lawsuit." R & R at 4.

"forfeiture," and that "waiver has no application here" because no evidence has been submitted that Plaintiff "intentionally relinquished or abandoned her Appointments Clause challenge by not raising it in the administrative proceedings." *Id.* at 6–7 (citing *United States v. Olano*, 507 U.S. 725, 733 (1933)). Moreover, the Commissioner's numerous citations to "non-binding district court decisions" do not substantiate waiver's applicability in this case in light of the fact that "many" of them "confuse the doctrines . . . and do not sufficiently make a sound argument for applying waiver in this case."[4] *Id.* at 7 (citing docket no. 14 at 11–12, 12 n.5, 13 n.6).

Second, the R & R determines that no federal circuit precedent mandates that the Court must apply forfeiture in this case. *Id.* at 7–9. To the contrary, the Supreme Court has "expressly rejected" any "issue-specific exhaustion requirement at the Appeals Council level in disability cases" and ruled in favor of *Lucia*'s petitioner, who "did not raise his Appointments Clause challenge before the ALJ." *Id.* at 7–8 (citing *Lucia*, 138 S. Ct. at 2050; *Sims v. Apfel*, 530 U.S. 103, 112 (2000)). The R & R further determines that the federal circuit decisions cited by the Commissioner "do not address the unique context of administrative proceedings before the [SSA], and they provide little guidance on the question before the Court." *Id.* at 8 (citing docket no. 14 at 8–10). For instance, with respect to *D.R. Horton, Inc. v. N.L.R.B.*, the R & R finds that the Fifth Circuit highlighted "the plaintiff's failure to urge his constitutional objection in the administrative proceedings . . . in the context of discussing a statutory requirement particular to [those] . . . proceedings," and also notes that the Commissioner "has not identified a similar statutory

---

[4] The R & R also clarifies that the Commissioner's forfeiture argument "seems to be rooted in the concept of issue exhaustion—the principle that a claimant who fails to raise and develop a specific issue during the administrative process has not exhausted the issue and therefore has forfeited the right to raise the issue upon judicial review." *Id.* at 7 (citing, *e.g.*, *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006)).

requirement that applies in the Social Security context" and would preclude the Court from considering Plaintiff's Appointments Clause challenge.[5] *Id.* at 8–9 (citing 737 F.3d 344, 351, 351 n.5 (5th Cir. 2013)).

Third, the R & R agrees with the Third Circuit that the three factors highlighted by the Supreme Court to determine whether to impose an issue-exhaustion requirement where none previously existed[6] "favor rejecting ALJ-level issue exhaustion" for Plaintiff's Appointments Clause challenge. *Id.* at 10 (citing *Cirko*, 948 F.3d at 153). The R & R highlights that the "significant distinctions" between the instant proceedings and the proceedings in *Lucia* and *D.R. Horton*, including formality and the degree to which proceedings are adversarial, "figured prominently in the Supreme Court's decision not to endorse issue-level exhaustion at the Appeals Council level in *Sims* [*v. Apfel*]." *Id.* (citing 20 C.F.R. § 404.900(b); 530 U.S. at 110). With specific respect to SSA administrative proceedings, the R & R observes that both the Supreme Court and Third Circuit have held that the ALJ and Appeals Council are the entities primarily responsible for identifying and developing arguments, rather than a social security claimant. *Id.* at 10–11 (citing

---

[5] Moreover, the R & R concludes that the Commissioner's non-Fifth Circuit appellate citations are unavailing, given that the petitioners in the cited cases failed to raise their Appointments Clause challenges in both the administrative proceedings and their opening briefs in federal court, whereas Plaintiff raised her Appointments Clause challenge in her opening brief. *Id.* at 9 (citing *Kabani & Co. v. SEC*, 733 F. App'x 918, 919 (9th Cir. 2018); *N.L.R.B. v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795–96 (8th Cir. 2013)). The R & R further highlights that the Supreme Court "has at least in one context chosen to exercise its 'discretion' and reach an Appointments Clause challenge, despite the failure of a claimant to press the issue in the administrative process." *Id.* (quoting *Freytag v. Comm'r*, 501 U.S. 868, 879 (1991)).

[6] "In evaluating whether or not to impose an issue-exhaustion requirement in a context where one has not been imposed before, the Supreme Court has assessed (a) the nature of the claim presented; (b) the characteristics of the particular administrative procedure provided; and (c) the balance between the interest of the individual in retaining prompt access to a federal judicial forum and countervailing interests favoring exhaustion." *Id.* at 10 (citing *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992)).

*Sims*, 530 U.S. at 111–12; *Cirko*, 948 F.3d at 156). Given these holdings and the fact that "many claimants are unrepresented at the informal ALJ hearings and only first become aware of an Appointments Clause issue when they have the benefit of counsel in federal court," the R & R determines that imposing an issue exhaustion requirement would cause "prejudice" to claimants.[7] *Id.* at 11 (citing *Cirko*, 948 F.3d at 157). The R & R further finds that the application of exhaustion in this case is unmerited because "'issue-exhaustion requirements are largely creatures of statute,' and there is no statute or regulation that could be interpreted as requiring issue exhaustion of constitutional claims in the Social Security context." *Id.* at 12–13 (quoting *Sims*, 530 U.S. at 106). Finally, while the R & R acknowledges that "[j]udicial efficiency is an important value" that could weigh in favor of applying forfeiture in this case, it concludes that efficiency is outweighed by "the strong individual interest of Plaintiff in having her disability claims properly adjudicated" and "the public interest in the integrity and constitutionality of the administrative process." *Id.* at 13 (citing *Cirko*, 948 F.3d at 155).

   3.   *The Commissioner's Objections*

      The Commissioner makes several objections to Magistrate Judge Chestney's R & R. *See* docket no. 19. Many of the Commissioner's objections are largely identical to arguments already considered and rejected in the R & R,[8] though some of these objections are distinct from previous

---

[7] The R & R notes that the SSA regulations cited by the Commissioner to substantiate a regulatory mandate for applying issue exhaustion were "in place before the Supreme Court decided *Sims* and apparently [were] not a basis for a finding of issue exhaustion there." *Id.* at 11 (citing 20 C.F.R. § 404.933(a)(2)). The R & R also determines that neither the cases nor the regulations to which the Commissioner cites speak to why a claimant, such as Plaintiff, should be required to raise a constitutional issue like an Appointments Clause challenge before an ALJ who "is unable to adjudicate the claim herself [given that] the topic is inherently beyond the scope of the administrative proceedings." *Id.* at 11–12 (citing *Weinberger v. Salfi*, 422 U.S. 749, 767 (1975)).

[8] *Compare* docket no. 19 at 2–4 (defining "timely" in such a manner as to preclude consideration

arguments.

For instance, the Commissioner concedes that "SSA may not have a regulation that explicitly requires issue exhaustion at the ALJ level" but nonetheless insists that Agency regulations enshrine a "general obligation . . . to raise all issues—including constitutional issues—to the agency at the earliest possible juncture." Docket no. 19 at 5 (citing, *e.g.*, 20 C.F.R. §§ 404.933(a)(2), 416.1433(a)(3)). The Commissioner claims that the R & R's dismissal of these general SSA regulations on the grounds that they were in place at the time that *Sims* was decided fails to "recognize" that they "primarily address raising issues to the ALJ, not the Appeals Council, and thus *Sims* never addressed [them]." *Id.* at 6.

Further, the Commissioner asserts that the R & R's reliance on the non-adversarial nature of SSA disability proceedings is unsupported by *Sims*, given that the Supreme Court "took pains . . . to make clear that its opinion should not be read to excuse forfeiture for issues that were never raised before the[A]gency at all." *Id.* (citing 530 U.S. at 107). Further, the Commissioner argues that Plaintiff's Appointments Clause challenge is a "purely legal . . . attack on the structural integrity of the [administrative] process," which is "adversarial" and distinct from the *Sims*

---

of Plaintiff's Appointments Clause challenge), *with* docket no. 14 at 8–9 (same). *Compare* docket no. 19 at 10–11 (describing the negative impact that a holding for Plaintiff would have on SSA's administrative efficiency), *with* docket no. 14 at 14–15 (same). *Compare* docket no. 19 at 4–5 (declaring *Sims*'s inapplicability to ALJ-level issue exhaustion and noting that the "weight of post-*Sims* authority" supports issue exhaustion in this case), *with* docket no. 14 at 10–11 (same). *Compare* docket no. 19 at 6 n.4 (claiming that Appointments Clause challenges that are initially raised in federal district court "do not qualify for relief under SSR 19-1p [2019 WL 1324866 (Mar. 15, 2019)]" given *Lucia*'s definition of "timely"), *with* docket no. 14 at 14 n.7 (same). *Compare* docket no. 19 at 8–10, 8–9 n.5 (asserting that the "vast majority of district courts," "55 out of 59 district courts outside of the Third Circuit," have agreed with the Commissioner's issue exhaustion arguments), *with* docket no. 14 at 12–13, 13 n.6 (same). *Compare* docket no. 19 at 11 (arguing that the Supreme Court in *Freytag* did not "categorically excus[e] Appointments Clause challenge from general waiver and forfeiture principles"), *with* docket no. 14 at 9–10 (same).

petitioner's "evidentiary issues." *Id.* at 6–7 (citing *Sims*, 530 U.S. at 105–06). In addition, the Commissioner claims that the Fifth Circuit "has rejected challenges to vocational expert testimony if the claimant did not cross-examine or object to the testimony during the hearing—even if the claimant appeared *pro se*," and that it would therefore be "reasonable to require a represented claimant—such as Plaintiff—to raise an objection to the appointment of an ALJ during . . . the administrative proceedings." *Id.* at 7 (citing *Hardman v. Colvin*, 820 F.3d 142, 146, 150 (5th Cir. 2016)).

The Commissioner further asserts that the Third Circuit incorrectly determined that claimants need not raise Appointments Clause challenges during administrative proceedings "because an ALJ could not have granted relief" on such a claim, and that the "appropriate inquiry is . . . whether the agency," rather than a "particular agency adjudicator," "could have granted relief." *Id.* at 8 (citing *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952); *Cirko*, 948 F.3d at 158, 158 n.11). The Commissioner claims that there is "no doubt" that it "can and has provided relief by appointing the agency's ALJs." *Id.* (citing 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019)). Moreover, while the Commissioner acknowledges that the Court has "discretion to excuse forfeiture in 'rare cases,'" it claims that Plaintiff's case is common among "many hundreds of cases in federal district courts in which disappointed . . . claimants have sought to raise unpreserved Appointments Clause challenges." *Id.* at 10 (quoting *Freytag*, 501 U.S. at 879). To that end, the Commissioner asserts that the R & R fails to identify any "distinguishing feature[s]" of Plaintiff's case that would justify the excusal of forfeiture. *Id.*

Finally, the Commissioner claims that this Court's adoption of the R & R would "create perverse incentives by rewarding litigants who chose to keep silent about possible defects in an

administrative proceeding" with the opportunity to raise Appointments Clause challenges for the first time in federal district court. *Id.* at 11. This in turn would contravene the intent behind forfeiture by allowing litigants to "move forward before the improperly appointed officer in the hopes of prevailing on the merits, secure in the knowledge that any adverse decision can be overturned through a belated Appointments Clause objection." *Id.* at 11–12 (citing *Freytag*, 501 U.S. at 895 (Scalia, J., concurring in part and concurring in the judgment); *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1255 (11th Cir. 2007)).

## DISCUSSION

When a party objects to a magistrate judge's recommendation, the Court must make a *de novo* determination of those portions of the recommendation to which an objection is made. 28 U.S.C. § 636(b)(1); *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634, 646 (5th Cir. 1994); FED. R. CIV. P. 72(b). The Court has conducted a thorough *de novo* review of the applicable law and the issues raised in the Commissioner's objections. *See* 28 U.S.C.§ 636(b)(1); FED. R. CIV. P. 72(b). Having conducted this *de novo* review, the Court finds that Magistrate Judge Chestney's R & R correctly articulates and applies the facts and law.

The parties do not dispute the merits of Plaintiff's Appointments Clause challenge, and, because waiver is inapplicable in this case,[9] the Commissioner's only viable defense is forfeiture. While the Commissioner conflates waiver and forfeiture in its opening brief, it sufficiently asserts forfeiture so as to allow this Court to consider the defense. In further light of *Sims*'s holding that claimants "need not . . . exhaust issues in a request for review by the Appeals Council," the sole

---

[9] *See* R & R at 6–7; *see also Olano*, 507 U.S. at 733 ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.").

issue before the Court is whether Plaintiff forfeited her Appointments Clause challenge by failing to raise it before ALJ Whittington or the Appeals Council.[10]

The case most central to this issue is *Lucia*, which was decided in June 2018, after ALJ Whittington held her hearing on Plaintiff's claims but before she issued her written opinion denying disability benefits. *Lucia* was an appeal to the Securities and Exchange Commission ("SEC") in which the plaintiff argued that his administrative proceeding was invalid because the ALJ adjudicating his claim had not been constitutionally appointed under the Appointments Clause. 138 S. Ct. at 2050. "The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Id.* at 2049 (quoting Art. II, § 2, cl. 2). Only the President, "Courts of Law," or "Heads of Departments" can appoint "Officers of the United States." *See id.* at 2050. ALJs are "Officers of the United States" within the meaning of the Appointments Clause. *Id.* at 2049.

The Supreme Court held in *Lucia* that the petitioner, who did not raise his Appointments Clause challenge before an ALJ but did raise it later in administrative proceedings, had "made . . . a timely challenge[,] . . . contested the validity of [the ALJ's] appointment before the [SEC], and continued pressing that claim in the Court of Appeals and this Court." *Id.* at 2055. While the Commissioner argues that this necessarily implies that Plaintiff must have raised her Appointments Clause challenge at some point during administrative proceedings to retain it, neither the *Lucia* Court nor the precedent to which it cites provide clear guidance as to what exactly determines such

---

[10] SSR 19-1, enacted by the SSA after *Lucia*, provides, "The Appeals Council will grant the claimant's request for review . . . where the claimant . . . raises . . . (either at the Appeals Council level, or previously had raised at the ALJ level) a challenge under the Appointments Clause to the authority of the ALJ who issued the decision or dismissal in the case." SSR 19-1p, 2019 WL 1324866, at *3.

a challenge's timeliness. *Id.* (citing *Ryder*, 515 U.S. at 182–83). The only conclusion that may be safely derived from *Lucia* itself is that a petitioner's challenge *can* be timely where they do not raise it before an ALJ but raise it later during an administrative proceeding.

While *Sims*, as the Commissioner notes, declined to reach the question of "[w]hether a claimant must exhaust issues before the ALJ," the case's discussion of issue exhaustion at the Appeals Council level is instructive as to the potential applicability of forfeiture to Plaintiff's Appointments Clause challenge. 530 U.S. at 107. To begin, no evidence substantiates the Commissioner's claim that the *Sims* Court's assessment of issue exhaustion requirements as being "largely creatures of statute" is dicta; rather, this assessment is an integral part of the *Sims* opinion to which numerous federal circuit courts have cited.[11] *See* 530 U.S. at 107 ("Our cases addressing issue exhaustion reflect [the] fact [that issue exhaustion requirements are typically derived from statute].").  The Commissioner concedes that "SSA may not have a regulation that explicitly requires issue exhaustion at the ALJ level" and does not cite to a statutory basis for the application of issue exhaustion in this case. Docket no. 19 at 5. Nonetheless, the Commissioner maintains that SSA regulations recognize a "general obligation" on the part of claimants to raise all issues, including constitutional issues, during the administrative process. *Id*. While SSA regulations do indicate that claimants must raise certain issues before an ALJ, they do not clearly embrace the position that constitutional claims, such as Appointments Clause challenges, must be raised by a

---

[11] S*ee, e.g.*, *Malu v. U.S. Atty. Gen.*, 764 F.3d 1282, 1287 (11th Cir. 2014) (quoting *Sims* as "noting that [issue exhaustion] requirements are 'largely creatures of statute'"); *Advocates for Highway & Auto Safety v. Fed. Motor Carrier Safety Admin.*, 429 F.3d 1136, 1148 (D.C. Cir. 2005) ("[R]equirements of administrative issue exhaustion are largely creatures of statute") (quoting *Sims*, 530 U.S. at 107).

claimant during the administrative process or be forfeited.[12] *See*, *e.g.*, *Cirko*, 948 F.3d at 156 ("Like Appeals Council hearings, ALJ hearings have no express exhaustion requirement.") (citation omitted); *Morris W. v. Saul*, No. 2:19-CV-320-JVB, 2020 WL 2316598, at *2 (N.D. Ind. May 11, 2020) ("[T]he Supreme Court in *Sims* . . . found that issue exhaustion was not required by any of the [SSA's] regulations, and the only amendments to the [cited] regulations post-*Sims* do not touch on the question of issue exhaustion.") (citation omitted). Further supporting the conclusion that there is no statutory or regulatory mandate to apply issue exhaustion at the ALJ level are concessions made by the Commissioner to that effect in other cases. *See Cirko*, 948 F.3d at 153 ("The Commissioner concedes that there is no statutory or regulatory exhaustion requirement that governs SSA proceedings.").

Even absent a statutory or regulatory basis for imposing issue exhaustion, federal courts can determine that forfeiture has occurred in certain circumstances. *See id.* (noting, where no statutory or regulatory basis for issue exhaustion exists, that "whether we should impose an exhaustion requirement here is a matter of sound judicial discretion.") (internal quotation marks and citations omitted). In *Sims*, the Supreme Court observed that, where neither statute nor

---

[12] *See* 20 C.F.R. §§ 404.933(a)(2) (stating that claimants "should" include within requests for hearing "[t]he reasons you disagree with the previous determination or decision" without specifying whether constitutional issues are included among such reasons), 404.933(b) (elaborating what claimants "must" do with respect to filings), 416.1433(a)(3) (same as 404.933(a)(2)), 404.939 ("If you object to the *issues* to be decided at the hearing, you must notify the administrative law judge in writing at the earliest possible opportunity"), 416.1439 (same as 404.939), 404.940 ("If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity."), 416.1440 (same as 404.940), 404.946(b) ("The administrative law judge or any party may raise a new issue . . . [and] [t]he administrative law judge shall notify you and any other party if he or she will consider any new issue"), 416.1446(b) (same), 404.924 (noting that claimants "*may* use the expedited appeals process" if various requirements are met), 416.1424 (same as 404.924) (emphasis added).

regulation imposes issue exhaustion, "the desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." 530 U.S. at 109 (citations omitted). "Where . . . an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker" than in an "adversarial administrative proceeding." *Id.* at 110. Indeed, "[t]he differences between courts and agencies are nowhere more pronounced than in Social Security proceedings," which are "inquisitorial rather than adversarial."[13] *Id.* at 110–11. While the *Sims* Court declined to address issue exhaustion at the ALJ level, it nonetheless observed that "[i]t is *the ALJ's* duty to investigate the facts and develop the arguments both for and against granting benefits," and that "[t]he Commissioner has no representative before *the ALJ* to oppose the claim for benefits." *Id.* at 111 (citations omitted) (emphasis added). These and other observations, made to support the non-application of issue exhaustion at the Appeals Council level, are equally applicable to ALJ-level forfeiture.[14] Given the above, the Third Circuit concluded that

---

[13] The Commissioner's contention that Fifth Circuit precedent cautions against "reliance on the non-adversarial nature of SSA's proceedings" is unavailing, given various distinctions between the case cited and the present dispute. Docket no. 19 at 7 (citing *Hardman*, 820 F.3d at 146, 150). For instance, while any claimant may find it self-evidently necessary to object to testimony with which they do not agree at an administrative hearing, the same cannot be said for the act of raising a novel, complex constitutional claim before an ALJ (rather than at a later point in time). *See Hardman*, 820 F.3d at 146, 150; *see also* docket no. 13 at 20 (characterizing SSA's forfeiture defense as "hyper-technical").

[14] *See Cirko*, 948 F.3d at 156 ("Like Appeals Council hearings, ALJ hearings are inquisitorial and driven by the agency rather than the claimant: [w]hereas ALJs must 'look[ ] fully into the issues,' '[a]ccept[] as evidence any documents that are material to the issues,' and 'decide when the evidence will be presented and when the issues will be discussed[]' . . . claimants need not even state their case or present written arguments.'") (quoting 20 C.F.R. §§ 404.944, 404.949). Moreover, the *Sims* Court's substantive references to ALJ-related procedures undercut the Commissioner's assertion that the Court would not have contemplated SSA regulations that "primarily address raising issues to the ALJ." Docket no. 19 at 6.

13

"[t]he two rationales driving *Sims* [*i.e.*, lack of statutory and regulatory basis, administrative proceedings that are not analogous to adversarial litigation] . . . cut against an exhaustion requirement for Appointments Clause challenges."[15] *Cirko*, 948 F.3d at 156. While this conclusion could be sufficient to justify remand here, the R & R and the Commissioner's Objections include other arguments that merit analysis.

One such argument made by the Commissioner is that federal circuit precedent mandates that "a party forfeits an Appointments Clause challenge involving an administrative law judge by failing to present the claim in a timely manner in the underlying agency proceeding." Docket no. 19 at 3-4; *see also* docket no. 14 at 8–9 (same). Upon review of the cases to which the Commissioner cites, the Court agrees with the R & R that "[t]hese appellate decisions, only one which is binding on this Court, do not address the unique context of administrative proceedings before the Social Security Administration, and they provide little guidance on the question before the Court." R & R at 8. With respect to *D.R. Horton, Inc.*, the Fifth Circuit asserted that addressing the issue exhaustion question "would have only a marginal effect on this case," which distinguishes that case from the instant dispute, in which Plaintiff's Appointments Clause claim could result in remand. 737 F.3d at 351. Moreover, while the Fifth Circuit "noted the plaintiff's failure to urge

---

[15] The Commissioner's attempt to paint *Jackson v. Apfel* as directly contrary to *Cirko* is wide of the mark. *See id.* at 4 n.2 (asserting that a court cannot entertain a plaintiff's challenge to their denial of benefits where they fail to "raise the issue before the Administrative Law Judge.") (citing 234 F.3d 246, 246–47 (5th Cir. 2000)). Not only was *Jackson* vacated by the Supreme Court, *see Jackson v. Massanari*, 534 U.S. 801 (2001), but the Fifth Circuit indicated in a post-*Jackson* decision that it may interpret *Sims* as standing for the proposition that issue exhaustion should not be applied at the ALJ level. *See Gardner v. Massanari*, No. 00-50449, 2001 WL 822457, at *1 (5th Cir. 2001) ("The Supreme Court in *Sims* . . . held that to preserve issues for judicial review, a claimant who has exhausted his administrative remedies is not also required to exhaust issues in a request for review by the Appeals Council. Accordingly, we have jurisdiction to review Gardner's claims *brought for the first time before the district court*.") (unpublished) (emphasis added).

his constitutional objection in the administrative proceedings," it did so "only in the context of discussing a statutory requirement particular to administrative proceedings before the National Labor Relations Board," whereas here there is no statutory requirement for issue exhaustion particular to the SSA. R & R at 8–9 (citing *D.R. Horton, Inc.*, 737 F.3d at 351 n.5). In addition, the non-binding precedent to which the Commissioner cites is distinguishable from this case because, unlike this case, it involves disputes before non-SSA agencies and departments and includes various petitioners who, unlike Plaintiff, "failed to include the [Appointments Clause] argument in the opening appellate brief filed in federal court."[16] *Id.* at 9. "In short, there is no binding or even persuasive Circuit Court precedent for embracing issue-level forfeiture here." *Id.*

As the R & R notes, the Third Circuit in *Cirko* "employs the Supreme Court's general approach to evaluating whether or not to impose an issue-exhaustion requirement as to an Appointments Clause challenge." R & R at 10; *see Cirko*, 948 F.3d at 153. "To determine whether to impose an exhaustion requirement where we have not done so before, [the Court] must assess (a) the 'nature of the claim presented,' (b) the 'characteristics of the particular administrative procedure provided,' and (c) the proper 'balance [between] the interest of the individual in retaining prompt access to a federal judicial forum [and] countervailing institutional interests favoring exhaustion.'" *Cirko*, 948 F.3d at 153 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 146

---

[16] *See Gonnella v. SEC*, 954 F.3d 536, 543-46 (2d Cir. 2020); *Malouf v. SEC*, 933 F.3d 1248, 1258 (10th Cir. 2019), *reh'g denied*; *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 754 (6th Cir. 2019); *Energy W. Mining Co. v. Lyle*, 929 F.3d 1202, 1206 (10th Cir. 2019); *Pharmacy Doctors Enters., Inc. v. Drug Enf't Admin.*, No. 18-11168, 2019 WL 4565481, at *3 (11th Cir. Sept. 20, 2019) (per curiam) (unpublished); *Kabani & Co. v. SEC*, 733 F. App'x 918, 919 (9th Cir. 2018) (unpublished); *Turner Bros., Inc. v. Conley*, 757 F. App'x 697, 700 (10th Cir. Dec. 11, 2018); *NLRB v. RELCO Locomotives, Inc.*, 734 F.3d 764, 795, 798 (8th Cir. 2013); *Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 574 F.3d 748, 755-56 (D.C. Cir. 2009) (per curiam); *In re DBC*, 545 F.3d 1373, 1378-81 (Fed. Cir. 2008).

(1992)); *see also Sims*, 530 U.S. at 113 ("The inquiry [into issue exhaustion's application absent statutory and regulatory basis] requires careful examination of 'the characteristics of the particular administrative procedure provided.'") (O'Connor, J., concurring in part and concurring in the judgment) (quoting *McCarthy*, 503 U.S. at 146). For the following reasons, all three of these factors weigh against the application of issue exhaustion in this case.

With respect to the first factor, the Third Circuit noted that "exhaustion is generally inappropriate where a claim serves to vindicate structural constitutional claims like Appointments Clause challenges, which implicate both individual constitutional rights and the structural imperative of separation of powers." *Cirko*, 948 F.3d at 153 (citing *Glidden Co. v. Zdanok*, 370 U.S. 530, 536–37 (1962)). While the Commissioner contends that Plaintiff's claim is "adversarial" in nature, docket no. 19 at 6–7, this contention has no bearing on the fact that Plaintiff's Appointments Clause claim is intended to rectify the unconstitutional (as accepted by both parties) error that was ALJ Whittington's hearing Plaintiff's case prior to appointment under the Appointments Clause. Docket no. 13 at 20 (specifying SSA's "unconstitutional actions"); *see also Cirko*, 948 F.3d at 155 (holding that Appointments Clause challenges have "importance to separation of powers and, ultimately, individual liberty"). As such, the first factor appears to weigh in favor of not applying issue exhaustion to Plaintiff's Appointments Clause claim.

Regarding the second factor, the Third Circuit's analysis of the "characteristics of the particular administrative procedure provided" largely maps onto the *Sims* Court's inquiry into whether a particular administrative proceeding is analogous to typical, adversarial litigation. *Cirko*, 948 F.3d at 153 (citing *McCarthy*, 503 U.S. at 146). As is discussed above, SSA proceedings are distinct from typical, adversarial litigation in various ways and are "inquisitorial rather than

16

adversarial." *Sims*, 530 U.S. at 110–11. These distinctions support the conclusion reached by the Third Circuit that the second factor "cut[s] against an exhaustion requirement for Appointments Clause challenges." *Cirko*, 948 F.3d at 156.

Finally, the question of whether to apply issue exhaustion in this case necessitates a "balanc[ing] [of] the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146. This in turn implicates the Commissioner's claim to the importance of judicial efficiency and Plaintiff's "strong individual interest . . . in having her disability claims properly adjudicated." R & R at 13. While the Commissioner seeks to impress upon the Court that a decision in Plaintiff's favor could be catastrophic for the efficiency of the SSA's administrative apparatus (and, in turn, first-time claimants making their way through the ALJ/Appeals Court system), the Third Circuit reframes this "hyperbole" in terms of demonstrable "facts." *Cirko*, 948 F.3d at 159. "Under the applicable procedural rules, claimants must appeal the Appeals Council's decision to the District Court within sixty days . . . and *Lucia* was decided more than a year ago[.]" *Id.* (citing 42 U.S.C. § 405(g); 138 S. Ct. at 2044). "That means every claimant whose benefits were denied prior to *Lucia* has long since either filed an appeal in district court or become time-barred from doing so." *Id.* "Those whose claims were still at the initial stage will have their claims adjudicated by a constitutionally appointed ALJ." *Id.* "And the SSA, in the meantime, has promulgated administrative guidance instructing that claimants with cases then pending on administrative appeal would have their claims reviewed *de novo* before the now-duly-appointed Appeals Council." *Id.* (citing SSR 19-1p; Titles II & XVI: Effect of the Decision in *Lucia v. Securities and Exchange Commission (SEC)* On Cases Pending at the Appeals Council, 84 Fed. Reg. 9582–9583

(Mar. 15, 2019)). Therefore, "[t]he effect of [a] decision [in favor of Plaintiff] . . . is limited" and a "drop in the bucket relative to the thousands of claims that the SSA has voluntarily ordered (and thus apparently has the resources enabling) the Appeals Council to review." *Id*.

Meanwhile, Plaintiff's interest in "retaining prompt access to a federal judicial forum" is, per the Third Circuit, "[h]igh." *Id*. at 156 (citation omitted). As the R & R observed, Plaintiff has a "strong individual interest . . . in having her disability claims properly adjudicated—claims affecting her very livelihood." R & R at 13. By the same token, the application of issue exhaustion here would negatively impact Plaintiff's individual interest and, therefore, weighs in favor of not finding forfeiture.[17] "In short, the individual interest in [Plaintiff's] Appointments Clause challenge being heard on the merits is high, and an exhaustion requirement would seriously erode it." *Cirko*, 948 F.3d at 157; *see also Sims*, 530 U.S. at 112 ("[T]he general rule [of issue exhaustion] makes little sense in this particular context.") (citation omitted).[18]

---

[17] For instance, the imposition of an ALJ-level issue exhaustion requirement for Appointments Clause claims would "upend" the typical "arrangement" between claimants and the SSA "by forcing claimants—despite the informal, non-adversarial nature of the review process—to root out a constitutional claim even beyond the power of the agency to remedy, or alternatively risk forfeiture." *Cirko*, 948 F.3d at 157. In addition, "an exhaustion requirement would prejudice those claimants who go unrepresented at their ALJ hearings and then, perhaps with the benefit of counsel, seek to raise such a claim in federal court." *Id*. at 157 n.7 ("Notably, a large percentage—roughly thirty percent—of claimants go unrepresented at their ALJ hearings.") (citing *Social Security Administration (SSA) Annual Data for Representation at Social Security Hearings*, Soc. Sec. Admin. (May 23, 2018), https://www.ssa.gov/open/data/representation-at-ssa-hearings.html).

Further, it is worth noting that *Lucia* was decided in June 2018, after ALJ Whittington held her hearing on Plaintiff's claims but before she issued her written opinion denying disability benefits. As such, the upending of the typical SSA administrative arrangement would be even more keenly felt by Plaintiff, who did not have the opportunity to review (or even hear about) *Lucia* in advance of her hearing before ALJ Whittington.

[18] The Commissioner separately asserts that the Third Circuit erred in determining that "claimants did not need to raise Appointments Clause claims in their proceedings because an ALJ could not have granted relief on an Appointments Clause claim," given that "the appropriate inquiry is . . . whether the agency could have granted relief." Docket no. 19 at 8 (citing *L.A. Tucker*, 344 U.S. at

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Magistrate Judge Chestney's Report and Recommendation (docket no. 16) is **ADOPTED** in full, that the Commissioner's decision be **VACATED** and that this case be **REMANDED** for a new hearing before a new and properly appointed ALJ.[19] The Court does not consider and makes no rulings on Plaintiff's arguments regarding the merits of the ALJ's determination, and the new ALJ will be tasked with considering the entire medical record, undertaking the sequential evaluation process anew, and making her own disability determination.

It is SO ORDERED.

SIGNED this 19th day of June, 2020.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

37). The Commissioner further argues that "there is no doubt that the Commissioner of Social Security can and has provided relief by appointing the agency's ALJs." *Id*. (citing 84 Fed. Reg. 9582, 9583 (Mar. 15, 2019)). Even if this contention were to be verified, *Cirko*'s logic with respect to the non-application of issue exhaustion in this case would remain persuasive.

[19] The Acting Commissioner of the SSA "ratified and approved the appointments of [SSA] ALJs," presumably including ALJ Whittington, "on July 16, 2018 in accordance with the Appointments Clause." R & R at 4 (citing Social Security Emergency Message (EM) 18003 REV 2, § B (available at: https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM) (last visited June 12, 2020)). However, because the Supreme Court clarified in *Lucia* that the reviewing ALJ on remand cannot be the original, improperly appointed ALJ (even if that ALJ were to have been subsequently ratified and appointed), the Court remands to "another ALJ" to "cure the constitutional error." 138 S. Ct. 2055.

19